UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

ELIZABETH FLINT                                          **CV**

                            Plaintiff,

            v.                                           **COMPLAINT**

ALLEN/ORCHARD, LLC, ROCKWOOD                            **JURY TRIAL REQUESTED**
ENTERTAINMENT, INC., ROCKWOOD MUSIC
CORPORATION AND KENROCK
ENTERPRISES, LLC

                            Defendants.
---------------------------------------------------------------x

## COMPLAINT

        Plaintiff Elizabeth Flint (hereafter referred to as "plaintiff"), by counsel, Parker Hanski

LLC, as and for the Complaint in this action against Defendants Allen/Orchard, LLC, Rockwood

Entertainment, Inc., Rockwood Music Corporation and Kenrock Enterprises, LLC (together

referred to as "defendants") hereby alleges as follows:

## NATURE OF THE CLAIMS

        1.      This lawsuit opposes pervasive, ongoing and inexcusable disability discrimination

by the defendants.  In this action, plaintiff seeks declaratory, injunctive and equitable relief, as

well as monetary damages and attorney's fees, costs and expenses to redress defendants'

unlawful disability discrimination against plaintiff, in violation of Title III of the Americans with

Disabilities Act ("ADA") 42 U.S.C. §§ 12181 *et seq.* and its implementing regulations, the New

York State Executive Law (the "Executive Law"), § 296, New York State Civil Rights Law, §

40, and the Administrative Code of the City New York (the "Administrative Code"), § 8-107.

Plaintiff also alleges claims for Negligence.  As explained more fully below, defendants own,

lease, lease to, operate and control a place of public accommodation that violates the above-

1

mentioned laws.  Defendants are vicariously liable for the acts and omissions of their employees and agents for the conduct alleged herein.

2.      These defendants made a financial decision to ignore the explicit legal requirements for making their place of public accommodation accessible to persons with disabilities – all in the hopes that they would never be caught.  In so doing, defendants made a calculated, but unlawful, decision that disabled customers are not worthy.  The day has come for defendants to accept responsibility.  This action seeks to right that wrong via recompensing plaintiff and making defendants' place of public accommodation fully accessible so that plaintiff can finally enjoy the full and equal opportunity that defendants provide to non-disabled customers.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 12188 and 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of plaintiff's rights under the ADA.  The Court has supplemental jurisdiction over plaintiff's related claims arising under the New York State and City laws pursuant to 28 U.S.C. § 1367(a).

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because defendants' acts of discrimination alleged herein occurred in this district and defendants' place of public accommodation that are the subject of this action are located in this district.

## PARTIES

5.      At all times relevant to this action, plaintiff Elizabeth Flint has been and remains currently a resident of the State and City of New York.

2

6.      At all times relevant to this action, plaintiff Elizabeth Flint has been and remains a wheelchair user.  Plaintiff suffers from medical conditions that inhibit walking and restrict body motion range and movement.

7.      Defendant Allen/Orchard, LLC owns the property located at 192-196 Allen Street in New York County, New York (hereinafter referred to as "192-196 Allen Street").

8.      Defendant Allen/Orchard, LLC is licensed to do and does business in New York State.  Defendants Rockwood Entertainment, Inc., Rockwood Music Corporation and Kenrock Enterprises, LLC are licensed to do and do business in New York State.

9.      At all relevant times, defendants Rockwood Entertainment, Inc., Rockwood Music Corporation and Kenrock Enterprises, LLC operate and/or lease property located at 192-196 Allen Street from defendant Allen/Orchard, LLC (hereinafter referred to as the "Rockwood Music Hall premises").

10.      Upon information and belief, Allen/Orchard, LLC and Rockwood Entertainment, Inc., Rockwood Music Corporation and Kenrock Enterprises, LLC have a written lease agreement(s).

11.      Upon information and belief, defendants are related companies under common control.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

12.      Each of the defendants is a public accommodation as each owns, leases, leases to, controls and/or operates a place of public accommodation, the Rockwood Music Hall premises located at 192-196 Allen Street, within the meaning of the ADA (42 U.S.C. § 12181 and 28 C.F.R. § 36.104), the Executive Law (§ 292(9)) and the Administrative Code (§ 8-102(9)).

13.     The Rockwood Music Hall premises is a place of public accommodation within the meaning of the ADA (42 U.S.C. § 12181 and 28 C.F.R. § 36.104), the Executive Law (§ 292(9)) and the Administrative Code (§ 8-102(9)) as it is operated by private entities and its operations affect commerce.

14.     Numerous architectural barriers exist at defendants' place of public accommodation that prevent and/or restrict access to plaintiff, a person with a disability.

15.     Upon information and belief, 192-196 Allen Street was designed and constructed for first possession after January 26, 1993.

16.     At some time after January 1992, defendants made alterations to 192-196 Allen Street, including areas adjacent and/or attached to 192-196 Allen Street.

17.     At some time after January 1992, defendants made alterations to the Rockwood Music Hall premises, and to areas of 192-196 Allen Street related to the Rockwood Music Hall premises.

18.     At some time after January 1992, defendants altered the primary function areas of the Rockwood Music Hall premises and 192-196 Allen Street that relate to the Rockwood Music Hall premises.

19.     Since the effective date of § 27-292 of the Administrative Code (also known as "Local Law 58"), defendants have constructed and/or made alterations to the Rockwood Music Hall premises, and to areas of 192-196 Allen Street related to the Rockwood Music Hall premises.

20.     Within the past three years of filing this action, plaintiff attempted to and desired to access the Rockwood Music Hall premises.

21.     The services, features, elements and spaces of defendants' place of public accommodation are not readily accessible to, or usable by plaintiff as required by the Americans with Disabilities Act Accessibility Guidelines, 28 C.F.R. Part 36, Appendix A, and adopted by the United States Department of Justice in 1991 as the Standards for Accessible Design ("1991 Standards") or the revised final regulations implementing Title III of the ADA adopted by the United States Department of Justice in 2010 as the 2010 Standards for Accessible Design ("2010 Standards").

22.     The services, features, elements and spaces of defendants' place of public accommodation are not readily accessible to, or usable by plaintiff as required by the Administrative Code § 27-292 *et. seq.*

23.     Because of defendants' failure to comply with the above-mentioned laws, including but not limited to the 1991 Standards or the 2010 Standards and the Administrative Code, plaintiff was and has been unable to enjoy safe, equal and complete access to defendants' place of public accommodation.

24.     Defendants' place of public accommodation has not been designed, constructed, or altered in compliance with the 1991 Standards, the 2010 Standards, the Administrative Code, the Building Code of the City of New York ("BCCNY"), or the 2014 New York City Construction Code ("2014 NYC").

25.     Barriers to access that plaintiff encountered and/or which exist at the defendants' place of public accommodation include, but are not limited to, the barriers identified below, and result from:

*I.*   The public entrance to Stage 1 is not accessible. See below.
*Defendants fail to provide that at least 50% of all its public entrances are accessible. See 1991 Standards 4.1.3.8(a)(i).*

*Defendants fail to provide that at least 60% of all its public entrances are accessible. See 2010 Standards 206.4.1.*
*Defendants fail to provide that ALL of its public entrances are accessible. See 2014 NYC 1105.1.*

II. The exterior entrance/exit door lacks level maneuvering clearances at the pull side of the door.  The sidewalk at the door slopes within 60 inches perpendicular to the doorway. Furthermore, the storefront is within 18 inches parallel to the doorway beyond the latch.
*Defendants fail to provide an accessible door with level maneuvering clearances. 60 inches perpendicular to the doorway for 18 inches parallel to the doorway beyond the latch is required for a forward approach to the pull side of a door.  See 1991 Standards 4.13.6, 2010 Standards 404.2.4, and 2014 NYC 404.2.3.*

III. The exterior entrance/exit door lacks level maneuvering clearances at the push side of the door.  The opposite wall (of the vestibule) is within 48 inches perpendicular to the doorway.
*Defendants fail to provide an accessible door with level maneuvering clearances. 48 inches perpendicular to the doorway is required for a forward approach to the push side of a door.  See 1991 Standards 4.13.6, 2010 Standards 404.2.4, and 2014 NYC 404.2.3.*

IV. There is less than 48 inches between the exterior entrance/exit door and the interior exit/exit door (at the vestibule).
*At two doors in a series (or at a vestibule), defendants fail to provide a level floor area that is 48 inches between the two doors plus the width of doors swinging into the space. See 1991 Standards 4.13.7, 2010 Standards 404.2.6, and 2014 NYC 404.2.5.*

V. There is no room for a tuning between the exterior entrance/exit door and the interior exit/exit door (at the vestibule).
*At two doors in a series (or at a vestibule), defendants fail to provide a level tuning space between the two doors. See 2014 NYC 404.2.5.*

VI. The interior entrance/exit door lacks level maneuvering clearances at the pull side of the door.  The opposite wall (of the vestibule) is within 60 inches perpendicular to the doorway. Furthermore, the side wall (of the vestibule) is within 18 inches parallel to the doorway beyond the latch.
*Defendants fail to provide an accessible door with level maneuvering clearances. 60 inches perpendicular to the doorway for 18 inches parallel to the doorway beyond the latch is required for a forward approach to the pull side of a door.  See 1991 Standards 4.13.6, 2010 Standards 404.2.4, and 2014 NYC 404.2.3.*

VII. There is no accessible seating at the bar. Furthermore, no accessible tables are provided in the surrounding dining area.
*Where food or drink is served at counters exceeding 34 inches in height for consumption by customers seated on stools or standing at the counter, a portion of the main counter which is 60 inches in length minimum shall be accessible or service shall be available at accessible tables within the same area. See 1991 Standards 5.2.*

6

*Where dining surfaces are provided for the consumption of food or drink, at least 5 percent of the seating spaces and standing spaces at the dining surfaces shall be accessible. See 2010 Standards 226.1, and 2014 NYC 1109.10.*

VIII.   The toilet room is not accessible. See below.
*Defendants fail to provide accessible toilet facilities.  See 1991 Standards 4.1.3(11), 2010 Standards 213.1, and 2014 NYC 1109.2.*

IX.   The door at the toilet room lacks level maneuvering clearances at the push side of the door.  The water closet is within 48 inches perpendicular to the doorway.
*Defendants fail to provide an accessible door with level maneuvering clearances. 48 inches perpendicular to the doorway is required for a forward approach to the push side of a door.  See 1991 Standards 4.13.6, 2010 Standards 404.2.4, and 2014 NYC 404.2.3.*

X.   The door at the toilet room has door hardware that requires tight grasping and twisting of the wrist to operate.
*Defendants fail to provide handles, pulls, latches, locks, and other operable parts that are operable with one hand and do not require tight grasping, pinching, or twisting of the wrist. See 1991 Standards 4.13.9, 2010 Standards 404.2.7, and 2014 NYC 404.2.6.*

XI.   The door at the toilet room has a privacy latch that is outside of an accessible reach range.
*Defendants fail to provide operable parts within an accessible reach range. See 1991 Standards 4.2.6, 2010 Standards 308.3.1, and 2014 NYC 308.3.1.*

XII.   The door at the toilet room has a privacy latch that requires pinching to operate.
*Defendants fail to provide handles, pulls, latches, locks, and other operable parts that are operable with one hand and do not require tight grasping, pinching, or twisting of the wrist. See 1991 Standards 4.13.9, 2010 Standards 404.2.7, and 2014 NYC 404.2.6.*

XIII.   The toilet room lacks a turning space.
*Defendants fail to provide the required turning space within accessible toilet and bathing facilities. See 1991 Standards 4.23.3, 2010 Standards 603.2.1, and 2014 NYC 603.2.1.*

XIV.   The toilet room has a coat hook that is outside of an accessible reach range.
*Defendants fail to provide operable parts within an accessible reach range. See 1991 Standards 4.2.6, 2010 Standards 308.3.1, and 2014 NYC 308.3.1.*

XV.   The toilet room lacks an accessible water closet. See below.
*Defendants fail to provide at least one accessible water closet within accessible toilet and bathing facilities. See 1991 Standards 4.23.4, 2010 Standards 213.3.2, and 2014 NYC 1109.2.*

XVI.   The toilet room lacks a water closet that is located 16" to 18" from the side wall.
*Defendants fail to provide an accessible standard water closet positioned with the centerline of the water closet 16 inches minimum to 18 inches maximum from the side*

*wall or partition. See 1991 Standards 4.16.2, 2010 Standards 604.2, and 2014 NYC 604.2.*

XVII.  The toilet room lacks a water closet with the required clearances. The lavatory and a trash receptacle are within the required clearances.
*Defendants fail to provide a clearance around the accessible water closet that is 60 inches minimum measured perpendicular from the side wall and 56 inches minimum measured perpendicular from the rear wall. See 1991 Standards 4.17.3, 2010 Standards 604.3.1, and 2014 NYC 604.3.1.*

XVIII.  The toilet room lacks a water closet with a toilet paper dispenser in the incorrect location.
*Defendants fail to provide an accessible water closet with a toilet paper dispensers that is located 7 inches minimum and 9 inches maximum in front of the water closet measured to the centerline of the dispenser. See 2010 Standards 604.7, and 2014 NYC 604.7.*

XIX.  The toilet room lacks a water closet with compliant grab bars.
*Defendants fail to provide an accessible water closet with a side wall grab bar that is 42 inches long minimum, located 12 inches maximum from the rear wall and extending 54 inches minimum from the rear wall. See 1991 Standards 4.16.4, 2010 Standards 604.5.1, and 2014 NYC 604.5.1.*
*Defendants fail to provide an accessible water closet with a vertical side wall grab bar. See 2014 NYC 604.5.1.*
*Defendants fail to provide an accessible water closet with a rear wall grab bar that is 36 inches long minimum and extend from the centerline of the water closet 12 inches minimum on one side and 24 inches minimum on the other side. See 1991 Standards 4.16.4, 2010 Standards 604.5.2, and 2014 NYC 604.5.2.*

XX.  The toilet room lacks a water closet with a flush control located on the open side of the water closet. The flush control is on the closed side of the fixture.
*Defendants fail to provide an accessible water closet with a flush control located on the open side of the water closet. See 1991 Standards 4.16.5, 2010 Standards 604.6, and 2014 NYC 604.6.*

XXI.  The toilet room lacks an accessible lavatory. See below.
*Defendants fail to provide at least one accessible lavatory within accessible toilet and bathing facilities.  See 1991 Standards 4.23.6, 2010 Standards 213.3.4, and 2014 NYC 1109.2.*

XXII.  The toilet room lacks a lavatory with a clear floor space for a forward approach.
*Defendants fail to provide accessible lavatories and/or sinks with a clear floor space of 30 inches by 48 inches positioned for a forward approach and the required knee and toe clearance. See 1991 Standards 4.19.3 and 4.24.5, 2010 Standards 606.2, and 2014 NYC 606.2.*

XXIII.  The toilet room lacks a lavatory with protected hot water and drain pipes.

8

*Defendants fail to provide accessible lavatories and/or sinks with water supply and drain pipes that are insulated or otherwise configured to protect against contact. See 1991 Standards 4.19.4, 2010 Standards 606.5, and 2014 NYC 606.6.*

XXIV. The toilet room lacks a mirror that is not more than 40" above the finish floor.
*Defendants fail to provide an accessible mirror (when located above lavatories or countertops) that is installed with the bottom edge of the reflecting surface 40 inches maximum above the finish floor within accessible toilet and bathing facilities. See 1991 Standards 4.19.6, 2010 Standards 603.3, and 2014 NYC 603.3.*

XXV. The toilet room has a paper towel dispenser that is outside of an accessible reach range.
*Defendants fail to provide operable parts within an accessible reach range. See 1991 Standards 4.2.6, 2010 Standards 308.3.1, and 2014 NYC 308.3.1.*

XXVI. The exit door is not accessible. The public entrance is also an exit and is not accessible as described above.
*Defendants fail to provide accessible means of egress in the number required by the code. See 1991 Standards 4.1.3(9), 2010 Standards 207.1, and 2014 NYC 1007.1.*

## STAGE 2

XXVII. The public entrance to Stage 2 is not accessible. See below.
*Defendants fail to provide that at least 50% of all its public entrances are accessible. See 1991 Standards 4.1.3.8(a)(i).*
*Defendants fail to provide that at least 60% of all its public entrances are accessible. See 2010 Standards 206.4.1.*
*Defendants fail to provide that ALL of its public entrances are accessible. See 2014 NYC 1105.1.*

XXVIII. The exterior entrance/exit door lacks level maneuvering clearances at the pull side of the door. The sidewalk at the door slopes within 60 inches perpendicular to the doorway.
*Defendants fail to provide an accessible door with level maneuvering clearances. 60 inches perpendicular to the doorway for 18 inches parallel to the doorway beyond the latch is required for a forward approach to the pull side of a door. See 1991 Standards 4.13.6, 2010 Standards 404.2.4, and 2014 NYC 404.2.3.*

XXIX. The interior entrance/exit door lacks level maneuvering clearances at the pull side of the door. The side wall (of the vestibule) is within 18 inches parallel to the doorway beyond the latch.
*Defendants fail to provide an accessible door with level maneuvering clearances. 60 inches perpendicular to the doorway for 18 inches parallel to the doorway beyond the latch is required for a forward approach to the pull side of a door. See 1991 Standards 4.13.6, 2010 Standards 404.2.4, and 2014 NYC 404.2.3.*

XXX. An accessible route is not provided between the main floor area and the entrance/exit doorways. There are steps just beyond the entrance/exit doorways.

*Defendants fail to provide an accessible route to each portion of the building that connects to accessible building entrances. See 1991 Standards 4.1.2(2), 2010 Standards 206.2.4, and 2014 NYC 1104.3.*

*Defendants fail to provide an accessible route to each level and mezzanine required to be accessible. See 1991 Standards 4.1.3(5), 2010 Standards 206.2.3, and 2014 NYC 1104.4*

*Defendants fail to provide that changes in level greater than 1/2-inch high are ramped. See 1991 Standards 4.3.8, 2010 Standards 303.4, and 2014 NYC 303.3.*

*XXXI.* An accessible route is not provided between the main floor area and the mezzanine. There are steps between the main floor area and the mezzanine.

*Defendants fail to provide an accessible route to each portion of the building that connects to accessible building entrances. See 1991 Standards 4.1.2(2), 2010 Standards 206.2.4, and 2014 NYC 1104.3.*

*Defendants fail to provide an accessible route to each level and mezzanine required to be accessible. See 1991 Standards 4.1.3(5), 2010 Standards 206.2.3, and 2014 NYC 1104.4*

*Defendants fail to provide that changes in level greater than 1/2-inch high are ramped. See 1991 Standards 4.3.8, 2010 Standards 303.4, and 2014 NYC 303.3.*

XXXII. There is no accessible seating at the bar. Furthermore, no accessible tables are provided in the surrounding dining area.

*Where food or drink is served at counters exceeding 34 inches in height for consumption by customers seated on stools or standing at the counter, a portion of the main counter which is 60 inches in length minimum shall be accessible or service shall be available at accessible tables within the same area. See 1991 Standards 5.2.*

*Where dining surfaces are provided for the consumption of food or drink, at least 5 percent of the seating spaces and standing spaces at the dining surfaces shall be accessible. See 2010 Standards 226.1, and 2014 NYC 1109.10.*

*XXXIII.* There is no accessible seating in the main floor area.

*Defendants fail to provide that at least 5% of the dining surfaces provided to customers are accessible.  See 1991 Standard 5.1, 2010 Standards 226.1, and 2014 NYC 1109.10.*

*XXXIV.* There is no accessible seating in the mezzanine area.

*Defendants fail to provide that at least 5% of the dining surfaces provided to customers are accessible.  See 1991 Standard 5.1, 2010 Standards 226.1, and 2014 NYC 1109.10.*

*XXXV.* The north or south toilet rooms are not accessible. See below.

*Defendants fail to provide accessible toilet facilities.  See 1991 Standards 4.1.3(11), 2010 Standards 213.1, and 2014 NYC 1109.2.*

XXXVI. The door at the north toilet room lacks level maneuvering clearances at the pull side of the door.  The bar is within 60 inches perpendicular to the doorway.

*Defendants fail to provide an accessible door with level maneuvering clearances. 60 inches perpendicular to the doorway for 18 inches parallel to the doorway beyond the latch is required for a forward approach to the pull side of a door.  See 1991 Standards 4.13.6, 2010 Standards 404.2.4, and 2014 NYC 404.2.3.*

XXXVII.  The door at the north toilet room lacks level maneuvering clearances at the push side of the door.  The toilet room is very small, and the opposite wall and fixtures are within 48 inches perpendicular to the doorway.
*Defendants fail to provide an accessible door with level maneuvering clearances. 48 inches perpendicular to the doorway is required for a forward approach to the push side of a door.  See 1991 Standards 4.13.6, 2010 Standards 404.2.4, and 2014 NYC 404.2.3.*

XXXVIII.  The door at the north toilet room has door hardware that requires tight grasping and twisting of the wrist to operate.
*Defendants fail to provide handles, pulls, latches, locks, and other operable parts that are operable with one hand and do not require tight grasping, pinching, or twisting of the wrist. See 1991 Standards 4.13.9, 2010 Standards 404.2.7, and 2014 NYC 404.2.6.*

XXXIX.  The door at the north toilet room has a privacy latch that is outside of an accessible reach range.
*Defendants fail to provide operable parts within an accessible reach range. See 1991 Standards 4.2.6, 2010 Standards 308.3.1, and 2014 NYC 308.3.1.*

XL.  The door at the north toilet room has a privacy latch that requires pinching to operate.
*Defendants fail to provide handles, pulls, latches, locks, and other operable parts that are operable with one hand and do not require tight grasping, pinching, or twisting of the wrist. See 1991 Standards 4.13.9, 2010 Standards 404.2.7, and 2014 NYC 404.2.6.*

XLI.  The north toilet room lacks a turning space.
*Defendants fail to provide the required turning space within accessible toilet and bathing facilities. See 1991 Standards 4.23.3, 2010 Standards 603.2.1, and 2014 NYC 603.2.1.*

XLII.  The north toilet room has a coat hook that is outside of an accessible reach range.
*Defendants fail to provide operable parts within an accessible reach range. See 1991 Standards 4.2.6, 2010 Standards 308.3.1, and 2014 NYC 308.3.1.*

XLIII.  The north toilet room lacks an accessible water closet. See below.
*Defendants fail to provide at least one accessible water closet within accessible toilet and bathing facilities. See 1991 Standards 4.23.4, 2010 Standards 213.3.2, and 2014 NYC 1109.2.*

XLIV.  The north toilet room lacks a water closet that is located 16" to 18" from the side wall.
*Defendants fail to provide an accessible standard water closet positioned with the centerline of the water closet 16 inches minimum to 18 inches maximum from the side wall or partition. See 1991 Standards 4.16.2, 2010 Standards 604.2, and 2014 NYC 604.2.*

XLV.  The north toilet room lacks a water closet with the required clearances. The lavatory and a trash receptacle are within the required clearances.

11

*Defendants fail to provide a clearance around the accessible water closet that is 60 inches minimum measured perpendicular from the side wall and 56 inches minimum measured perpendicular from the rear wall. See 1991 Standards 4.17.3, 2010 Standards 604.3.1, and 2014 NYC 604.3.1.*

XLVI.   The north toilet room lacks a water closet with a toilet paper dispenser in the incorrect location.
*Defendants fail to provide an accessible water closet with a toilet paper dispensers that is located 7 inches minimum and 9 inches maximum in front of the water closet measured to the centerline of the dispenser. See 2010 Standards 604.7, and 2014 NYC 604.7.*

XLVII.   The north toilet room lacks a water closet with compliant grab bars.
*Defendants fail to provide an accessible water closet with a side wall grab bar that is 42 inches long minimum, located 12 inches maximum from the rear wall and extending 54 inches minimum from the rear wall. See 1991 Standards 4.16.4, 2010 Standards 604.5.1, and 2014 NYC 604.5.1.*
*Defendants fail to provide an accessible water closet with a vertical side wall grab bar. See 2014 NYC 604.5.1.*
*Defendants fail to provide an accessible water closet with a rear wall grab bar that is 36 inches long minimum and extend from the centerline of the water closet 12 inches minimum on one side and 24 inches minimum on the other side. See 1991 Standards 4.16.4, 2010 Standards 604.5.2, and 2014 NYC 604.5.2.*

XLVIII.   The north toilet room lacks a water closet with a flush control located on the open side of the water closet. The flush control is on the closed side of the fixture.
*Defendants fail to provide an accessible water closet with a flush control located on the open side of the water closet. See 1991 Standards 4.16.5, 2010 Standards 604.6, and 2014 NYC 604.6.*

XLIX.   The north toilet room lacks an accessible lavatory. See below.
*Defendants fail to provide at least one accessible lavatory within accessible toilet and bathing facilities.  See 1991 Standards 4.23.6, 2010 Standards 213.3.4, and 2014 NYC 1109.2.*

L.   The north toilet room lacks a lavatory with a clear floor space for a forward approach.
*Defendants fail to provide accessible lavatories and/or sinks with a clear floor space of 30 inches by 48 inches positioned for a forward approach and the required knee and toe clearance. See 1991 Standards 4.19.3 and 4.24.5, 2010 Standards 606.2, and 2014 NYC 606.2.*

LI.   The north toilet room lacks a lavatory with protected hot water and drain pipes.
*Defendants fail to provide accessible lavatories and/or sinks with water supply and drain pipes that are insulated or otherwise configured to protect against contact. See 1991 Standards 4.19.4, 2010 Standards 606.5, and 2014 NYC 606.6.*

LII.   The north toilet room lacks a mirror that is not more than 40" above the finish floor.

12

*Defendants fail to provide an accessible mirror (when located above lavatories or countertops) that is installed with the bottom edge of the reflecting surface 40 inches maximum above the finish floor within accessible toilet and bathing facilities. See 1991 Standards 4.19.6, 2010 Standards 603.3, and 2014 NYC 603.3.*

LIII. The north toilet room has a paper towel dispenser that is outside of an accessible reach range.
*Defendants fail to provide operable parts within an accessible reach range. See 1991 Standards 4.2.6, 2010 Standards 308.3.1, and 2014 NYC 308.3.1.*

LIV. The door at the south toilet room lacks level maneuvering clearances at the pull side of the door. The bar is within 60 inches perpendicular to the doorway.
*Defendants fail to provide an accessible door with level maneuvering clearances. 60 inches perpendicular to the doorway for 18 inches parallel to the doorway beyond the latch is required for a forward approach to the pull side of a door. See 1991 Standards 4.13.6, 2010 Standards 404.2.4, and 2014 NYC 404.2.3.*

LV. The door at the south toilet room lacks level maneuvering clearances at the push side of the door. The toilet room is very small and the opposite wall and fixtures are within 48 inches perpendicular to the doorway.
*Defendants fail to provide an accessible door with level maneuvering clearances. 48 inches perpendicular to the doorway is required for a forward approach to the push side of a door. See 1991 Standards 4.13.6, 2010 Standards 404.2.4, and 2014 NYC 404.2.3.*

LVI. The door at the south toilet room has door hardware that requires tight grasping and twisting of the wrist to operate.
*Defendants fail to provide handles, pulls, latches, locks, and other operable parts that are operable with one hand and do not require tight grasping, pinching, or twisting of the wrist. See 1991 Standards 4.13.9, 2010 Standards 404.2.7, and 2014 NYC 404.2.6.*

LVII. The door at the south toilet room has a privacy latch that is outside of an accessible reach range.
*Defendants fail to provide operable parts within an accessible reach range. See 1991 Standards 4.2.6, 2010 Standards 308.3.1, and 2014 NYC 308.3.1.*

LVIII. The door at the south toilet room has a privacy latch that requires pinching to operate.
*Defendants fail to provide handles, pulls, latches, locks, and other operable parts that are operable with one hand and do not require tight grasping, pinching, or twisting of the wrist. See 1991 Standards 4.13.9, 2010 Standards 404.2.7, and 2014 NYC 404.2.6.*

LIX. The south toilet room lacks a turning space.
*Defendants fail to provide the required turning space within accessible toilet and bathing facilities. See 1991 Standards 4.23.3, 2010 Standards 603.2.1, and 2014 NYC 603.2.1.*

LX. The south toilet room has a coat hook that is outside of an accessible reach range.

13

*Defendants fail to provide operable parts within an accessible reach range. See 1991 Standards 4.2.6, 2010 Standards 308.3.1, and 2014 NYC 308.3.1.*

LXI.   The south toilet room lacks an accessible water closet. See below.
*Defendants fail to provide at least one accessible water closet within accessible toilet and bathing facilities. See 1991 Standards 4.23.4, 2010 Standards 213.3.2, and 2014 NYC 1109.2.*

LXII.   The south toilet room lacks a water closet that is located 16" to 18" from the side wall.
*Defendants fail to provide an accessible standard water closet positioned with the centerline of the water closet 16 inches minimum to 18 inches maximum from the side wall or partition. See 1991 Standards 4.16.2, 2010 Standards 604.2, and 2014 NYC 604.2.*

LXIII.   The south toilet room lacks a water closet with the required clearances. The lavatory and a trash receptacle are within the required clearances.
*Defendants fail to provide a clearance around the accessible water closet that is 60 inches minimum measured perpendicular from the side wall and 56 inches minimum measured perpendicular from the rear wall. See 1991 Standards 4.17.3, 2010 Standards 604.3.1, and 2014 NYC 604.3.1.*

LXIV.   The south toilet room lacks a water closet with a toilet paper dispenser in the incorrect location.
*Defendants fail to provide an accessible water closet with a toilet paper dispensers that is located 7 inches minimum and 9 inches maximum in front of the water closet measured to the centerline of the dispenser. See 2010 Standards 604.7, and 2014 NYC 604.7.*

LXV.   The south toilet room lacks a water closet with compliant grab bars.
*Defendants fail to provide an accessible water closet with a side wall grab bar that is 42 inches long minimum, located 12 inches maximum from the rear wall and extending 54 inches minimum from the rear wall. See 1991 Standards 4.16.4, 2010 Standards 604.5.1, and 2014 NYC 604.5.1.*
*Defendants fail to provide an accessible water closet with a vertical side wall grab bar. See 2014 NYC 604.5.1.*
*Defendants fail to provide an accessible water closet with a rear wall grab bar that is 36 inches long minimum and extend from the centerline of the water closet 12 inches minimum on one side and 24 inches minimum on the other side. See 1991 Standards 4.16.4, 2010 Standards 604.5.2, and 2014 NYC 604.5.2.*

LXVI.   The south toilet room lacks a water closet with a flush control located on the open side of the water closet. The flush control is on the closed side of the fixture.
*Defendants fail to provide an accessible water closet with a flush control located on the open side of the water closet. See 1991 Standards 4.16.5, 2010 Standards 604.6, and 2014 NYC 604.6.*

LXVII.   The south toilet room lacks an accessible lavatory. See below.

14

*Defendants fail to provide at least one accessible lavatory within accessible toilet and bathing facilities.  See 1991 Standards 4.23.6, 2010 Standards 213.3.4, and 2014 NYC 1109.2.*

LXVIII.   The south toilet room lacks a lavatory with a clear floor space for a forward approach.
*Defendants fail to provide accessible lavatories and/or sinks with a clear floor space of 30 inches by 48 inches positioned for a forward approach and the required knee and toe clearance. See 1991 Standards 4.19.3 and 4.24.5, 2010 Standards 606.2, and 2014 NYC 606.2.*

LXIX.   The south toilet room lacks a lavatory with protected hot water and drain pipes.
*Defendants fail to provide accessible lavatories and/or sinks with water supply and drain pipes that are insulated or otherwise configured to protect against contact. See 1991 Standards 4.19.4, 2010 Standards 606.5, and 2014 NYC 606.6.*

LXX.   The south toilet room lacks a mirror that is not more than 40" above the finish floor.
*Defendants fail to provide an accessible mirror (when located above lavatories or countertops) that is installed with the bottom edge of the reflecting surface 40 inches maximum above the finish floor within accessible toilet and bathing facilities. See 1991 Standards 4.19.6, 2010 Standards 603.3, and 2014 NYC 603.3.*

LXXI.   The south toilet room has a paper towel dispenser that is outside of an accessible reach range.
*Defendants fail to provide operable parts within an accessible reach range. See 1991 Standards 4.2.6, 2010 Standards 308.3.1, and 2014 NYC 308.3.1.*

LXXII.   The exit door is not accessible. The public entrance is also an exit and is not accessible as described above.
*Defendants fail to provide accessible means of egress in the number required by the code. See 1991 Standards 4.1.3(9), 2010 Standards 207.1, and 2014 NYC 1007.1.*

## STAGE 3

*LXXIII.*   The public entrance to Stage 3 is not accessible. See below.
*Defendants fail to provide that at least 50% of all its public entrances are accessible. See 1991 Standards 4.1.3.8(a)(i).*
*Defendants fail to provide that at least 60% of all its public entrances are accessible. See 2010 Standards 206.4.1.*
*Defendants fail to provide that ALL of its public entrances are accessible. See 2014 NYC 1105.1.*

LXXIV.   The entrance/exit door lacks level maneuvering clearances at the pull side of the door. The sidewalk at the door slopes within 60 inches perpendicular to the doorway.
*Defendants fail to provide an accessible door with level maneuvering clearances. 60 inches perpendicular to the doorway for 18 inches parallel to the doorway beyond the*

*latch is required for a forward approach to the pull side of a door.  See 1991 Standards 4.13.6, 2010 Standards 404.2.4, and 2014 NYC 404.2.3.*

LXXV.   An accessible route is not provided between the main floor area and the mezzanine. There are steps between the main floor area and the mezzanine.
*Defendants fail to provide an accessible route to each portion of the building that connects to accessible building entrances. See 1991 Standards 4.1.2(2), 2010 Standards 206.2.4, and 2014 NYC 1104.3.*
*Defendants fail to provide an accessible route to each level and mezzanine required to be accessible. See 1991 Standards 4.1.3(5), 2010 Standards 206.2.3, and 2014 NYC 1104.4*
*Defendants fail to provide that changes in level greater than 1/2-inch high are ramped. See 1991 Standards 4.3.8, 2010 Standards 303.4, and 2014 NYC 303.3.*

LXXVI.   An accessible route is not provided between the main floor area and the lower level. There are steps between the main floor area and the lower level.
*Defendants fail to provide an accessible route to each portion of the building that connects to accessible building entrances. See 1991 Standards 4.1.2(2), 2010 Standards 206.2.4, and 2014 NYC 1104.3.*
*Defendants fail to provide an accessible route to each level and mezzanine required to be accessible. See 1991 Standards 4.1.3(5), 2010 Standards 206.2.3, and 2014 NYC 1104.4*
*Defendants fail to provide that changes in level greater than 1/2-inch high are ramped. See 1991 Standards 4.3.8, 2010 Standards 303.4, and 2014 NYC 303.3.*

LXXVII.   There is no accessible seating at the bar. Furthermore, no accessible tables are provided in the surrounding dining area.
*Where food or drink is served at counters exceeding 34 inches in height for consumption by customers seated on stools or standing at the counter, a portion of the main counter which is 60 inches in length minimum shall be accessible or service shall be available at accessible tables within the same area. See 1991 Standards 5.2.*
*Where dining surfaces are provided for the consumption of food or drink, at least 5 percent of the seating spaces and standing spaces at the dining surfaces shall be accessible. See 2010 Standards 226.1, and 2014 NYC 1109.10.*

LXXVIII.   There is no accessible seating in the main floor area.
*Defendants fail to provide that at least 5% of the dining surfaces provided to customers are accessible.  See 1991 Standard 5.1, 2010 Standards 226.1, and 2014 NYC 1109.10.*

LXXIX.   There is no accessible seating in the mezzanine area.
*Defendants fail to provide that at least 5% of the dining surfaces provided to customers are accessible.  See 1991 Standard 5.1, 2010 Standards 226.1, and 2014 NYC 1109.10.*

LXXX.   There is no accessible seating in the lower level.
*Defendants fail to provide that at least 5% of the dining surfaces provided to customers are accessible.  See 1991 Standard 5.1, 2010 Standards 226.1, and 2014 NYC 1109.10.*

LXXXI.   The north or south toilet rooms are not accessible. See below.

*Defendants fail to provide accessible toilet facilities. See 1991 Standards 4.1.3(11), 2010 Standards 213.1, and 2014 NYC 1109.2.*

LXXXII.   The door at the north toilet room lacks level maneuvering clearances at the pull side of the door.  The bar is within 60 inches perpendicular to the doorway.
*Defendants fail to provide an accessible door with level maneuvering clearances. 60 inches perpendicular to the doorway for 18 inches parallel to the doorway beyond the latch is required for a forward approach to the pull side of a door.  See 1991 Standards 4.13.6, 2010 Standards 404.2.4, and 2014 NYC 404.2.3.*

LXXXIII.   The door at the north toilet room lacks level maneuvering clearances at the push side of the door.  The toilet room is very small and the opposite wall and fixtures are within 48 inches perpendicular to the doorway.
*Defendants fail to provide an accessible door with level maneuvering clearances. 48 inches perpendicular to the doorway is required for a forward approach to the push side of a door.  See 1991 Standards 4.13.6, 2010 Standards 404.2.4, and 2014 NYC 404.2.3.*

LXXXIV.   The door at the north toilet room has door hardware that requires tight grasping and twisting of the wrist to operate.
*Defendants fail to provide handles, pulls, latches, locks, and other operable parts that are operable with one hand and do not require tight grasping, pinching, or twisting of the wrist. See 1991 Standards 4.13.9, 2010 Standards 404.2.7, and 2014 NYC 404.2.6.*

LXXXV.   The door at the north toilet room has a privacy latch that is outside of an accessible reach range.
*Defendants fail to provide operable parts within an accessible reach range. See 1991 Standards 4.2.6, 2010 Standards 308.3.1, and 2014 NYC 308.3.1.*

LXXXVI.   The door at the north toilet room has a privacy latch that requires pinching to operate.
*Defendants fail to provide handles, pulls, latches, locks, and other operable parts that are operable with one hand and do not require tight grasping, pinching, or twisting of the wrist. See 1991 Standards 4.13.9, 2010 Standards 404.2.7, and 2014 NYC 404.2.6.*

LXXXVII.   The north toilet room lacks a turning space.
*Defendants fail to provide the required turning space within accessible toilet and bathing facilities. See 1991 Standards 4.23.3, 2010 Standards 603.2.1, and 2014 NYC 603.2.1.*

LXXXVIII.   The north toilet room has a coat hook that is outside of an accessible reach range.
*Defendants fail to provide operable parts within an accessible reach range. See 1991 Standards 4.2.6, 2010 Standards 308.3.1, and 2014 NYC 308.3.1.*

LXXXIX.   The north toilet room lacks an accessible water closet. See below.
*Defendants fail to provide at least one accessible water closet within accessible toilet and bathing facilities. See 1991 Standards 4.23.4, 2010 Standards 213.3.2, and 2014 NYC 1109.2.*

XC.     The north toilet room lacks a water closet that is located 16" to 18" from the side wall.
        *Defendants fail to provide an accessible standard water closet positioned with the centerline of the water closet 16 inches minimum to 18 inches maximum from the side wall or partition. See 1991 Standards 4.16.2, 2010 Standards 604.2, and 2014 NYC 604.2.*

XCI.    The north toilet room lacks a water closet with the required clearances. The lavatory and a trash receptacle are within the required clearances.
        *Defendants fail to provide a clearance around the accessible water closet that is 60 inches minimum measured perpendicular from the side wall and 56 inches minimum measured perpendicular from the rear wall. See 1991 Standards 4.17.3, 2010 Standards 604.3.1, and 2014 NYC 604.3.1.*

XCII.   The north toilet room lacks a water closet with a toilet paper dispenser in the incorrect location.
        *Defendants fail to provide an accessible water closet with a toilet paper dispensers that is located 7 inches minimum and 9 inches maximum in front of the water closet measured to the centerline of the dispenser. See 2010 Standards 604.7, and 2014 NYC 604.7.*

XCIII.  The north toilet room lacks a water closet with compliant grab bars.
        *Defendants fail to provide an accessible water closet with a side wall grab bar that is 42 inches long minimum, located 12 inches maximum from the rear wall and extending 54 inches minimum from the rear wall. See 1991 Standards 4.16.4, 2010 Standards 604.5.1, and 2014 NYC 604.5.1.*
        *Defendants fail to provide an accessible water closet with a vertical side wall grab bar. See 2014 NYC 604.5.1.*
        *Defendants fail to provide an accessible water closet with a rear wall grab bar that is 36 inches long minimum and extend from the centerline of the water closet 12 inches minimum on one side and 24 inches minimum on the other side. See 1991 Standards 4.16.4, 2010 Standards 604.5.2, and 2014 NYC 604.5.2.*

XCIV.   The north toilet room lacks a water closet with a flush control located on the open side of the water closet. The flush control is on the closed side of the fixture.
        *Defendants fail to provide an accessible water closet with a flush control located on the open side of the water closet. See 1991 Standards 4.16.5, 2010 Standards 604.6, and 2014 NYC 604.6.*

XCV.    The north toilet room lacks an accessible lavatory. See below.
        *Defendants fail to provide at least one accessible lavatory within accessible toilet and bathing facilities.  See 1991 Standards 4.23.6, 2010 Standards 213.3.4, and 2014 NYC 1109.2.*

XCVI.   The north toilet room lacks a lavatory with a clear floor space for a forward approach.
        *Defendants fail to provide accessible lavatories and/or sinks with a clear floor space of 30 inches by 48 inches positioned for a forward approach and the required knee and toe*

*clearance. See 1991 Standards 4.19.3 and 4.24.5, 2010 Standards 606.2, and 2014 NYC 606.2.*

XCVII.  The north toilet room lacks a lavatory with protected hot water and drain pipes.
*Defendants fail to provide accessible lavatories and/or sinks with water supply and drain pipes that are insulated or otherwise configured to protect against contact. See 1991 Standards 4.19.4, 2010 Standards 606.5, and 2014 NYC 606.6.*

XCVIII.  The north toilet room lacks a mirror that is not more than 40" above the finish floor.
*Defendants fail to provide an accessible mirror (when located above lavatories or countertops) that is installed with the bottom edge of the reflecting surface 40 inches maximum above the finish floor within accessible toilet and bathing facilities. See 1991 Standards 4.19.6, 2010 Standards 603.3, and 2014 NYC 603.3.*

XCIX.  The north toilet room has a paper towel dispenser that is outside of an accessible reach range.
*Defendants fail to provide operable parts within an accessible reach range. See 1991 Standards 4.2.6, 2010 Standards 308.3.1, and 2014 NYC 308.3.1.*

C.  The door at the south toilet room lacks level maneuvering clearances at the pull side of the door.  The bar is within 60 inches perpendicular to the doorway.
*Defendants fail to provide an accessible door with level maneuvering clearances. 60 inches perpendicular to the doorway for 18 inches parallel to the doorway beyond the latch is required for a forward approach to the pull side of a door.  See 1991 Standards 4.13.6, 2010 Standards 404.2.4, and 2014 NYC 404.2.3.*

CI.  The door at the south toilet room lacks level maneuvering clearances at the push side of the door.  The toilet room is very small and the opposite wall and fixtures are within 48 inches perpendicular to the doorway.
*Defendants fail to provide an accessible door with level maneuvering clearances. 48 inches perpendicular to the doorway is required for a forward approach to the push side of a door.  See 1991 Standards 4.13.6, 2010 Standards 404.2.4, and 2014 NYC 404.2.3.*

CII.  The door at the south toilet room has door hardware that requires tight grasping and twisting of the wrist to operate.
*Defendants fail to provide handles, pulls, latches, locks, and other operable parts that are operable with one hand and do not require tight grasping, pinching, or twisting of the wrist. See 1991 Standards 4.13.9, 2010 Standards 404.2.7, and 2014 NYC 404.2.6.*

CIII.  The door at the south toilet room has a privacy latch that is outside of an accessible reach range.
*Defendants fail to provide operable parts within an accessible reach range. See 1991 Standards 4.2.6, 2010 Standards 308.3.1, and 2014 NYC 308.3.1.*

CIV.  The door at the south toilet room has a privacy latch that requires pinching to operate.

*Defendants fail to provide handles, pulls, latches, locks, and other operable parts that are operable with one hand and do not require tight grasping, pinching, or twisting of the wrist. See 1991 Standards 4.13.9, 2010 Standards 404.2.7, and 2014 NYC 404.2.6.*

CV.   The south toilet room lacks a turning space.
*Defendants fail to provide the required turning space within accessible toilet and bathing facilities. See 1991 Standards 4.23.3, 2010 Standards 603.2.1, and 2014 NYC 603.2.1.*

CVI.   The south toilet room has a coat hook that is outside of an accessible reach range.
*Defendants fail to provide operable parts within an accessible reach range. See 1991 Standards 4.2.6, 2010 Standards 308.3.1, and 2014 NYC 308.3.1.*

CVII.   The south toilet room lacks an accessible water closet. See below.
*Defendants fail to provide at least one accessible water closet within accessible toilet and bathing facilities. See 1991 Standards 4.23.4, 2010 Standards 213.3.2, and 2014 NYC 1109.2.*

CVIII.   The south toilet room lacks a water closet that is located 16" to 18" from the side wall.
*Defendants fail to provide an accessible standard water closet positioned with the centerline of the water closet 16 inches minimum to 18 inches maximum from the side wall or partition. See 1991 Standards 4.16.2, 2010 Standards 604.2, and 2014 NYC 604.2.*

CIX.   The south toilet room lacks a water closet with the required clearances. The lavatory and a trash receptacle are within the required clearances.
*Defendants fail to provide a clearance around the accessible water closet that is 60 inches minimum measured perpendicular from the side wall and 56 inches minimum measured perpendicular from the rear wall. See 1991 Standards 4.17.3, 2010 Standards 604.3.1, and 2014 NYC 604.3.1.*

CX.   The south toilet room lacks a water closet with a toilet paper dispenser in the incorrect location.
*Defendants fail to provide an accessible water closet with a toilet paper dispensers that is located 7 inches minimum and 9 inches maximum in front of the water closet measured to the centerline of the dispenser. See 2010 Standards 604.7, and 2014 NYC 604.7.*

CXI.   The south toilet room lacks a water closet with compliant grab bars.
*Defendants fail to provide an accessible water closet with a side wall grab bar that is 42 inches long minimum, located 12 inches maximum from the rear wall and extending 54 inches minimum from the rear wall. See 1991 Standards 4.16.4, 2010 Standards 604.5.1, and 2014 NYC 604.5.1.*
*Defendants fail to provide an accessible water closet with a vertical side wall grab bar. See 2014 NYC 604.5.1.*

*Defendants fail to provide an accessible water closet with a rear wall grab bar that is 36 inches long minimum and extend from the centerline of the water closet 12 inches minimum on one side and 24 inches minimum on the other side. See 1991 Standards 4.16.4, 2010 Standards 604.5.2, and 2014 NYC 604.5.2.*

CXII.   The south toilet room lacks a water closet with a flush control located on the open side of the water closet. The flush control is on the closed side of the fixture.
*Defendants fail to provide an accessible water closet with a flush control located on the open side of the water closet. See 1991 Standards 4.16.5, 2010 Standards 604.6, and 2014 NYC 604.6.*

CXIII.   The south toilet room lacks an accessible lavatory. See below.
*Defendants fail to provide at least one accessible lavatory within accessible toilet and bathing facilities.  See 1991 Standards 4.23.6, 2010 Standards 213.3.4, and 2014 NYC 1109.2.*

CXIV.   The south toilet room lacks a lavatory with a clear floor space for a forward approach.
*Defendants fail to provide accessible lavatories and/or sinks with a clear floor space of 30 inches by 48 inches positioned for a forward approach and the required knee and toe clearance. See 1991 Standards 4.19.3 and 4.24.5, 2010 Standards 606.2, and 2014 NYC 606.2.*

CXV.   The south toilet room lacks a lavatory with protected hot water and drain pipes.
*Defendants fail to provide accessible lavatories and/or sinks with water supply and drain pipes that are insulated or otherwise configured to protect against contact. See 1991 Standards 4.19.4, 2010 Standards 606.5, and 2014 NYC 606.6.*

CXVI.   The south toilet room lacks a mirror that is not more than 40" above the finish floor.
*Defendants fail to provide an accessible mirror (when located above lavatories or countertops) that is installed with the bottom edge of the reflecting surface 40 inches maximum above the finish floor within accessible toilet and bathing facilities. See 1991 Standards 4.19.6, 2010 Standards 603.3, and 2014 NYC 603.3.*

CXVII.   The south toilet room has a paper towel dispenser that is outside of an accessible reach range.
*Defendants fail to provide operable parts within an accessible reach range. See 1991 Standards 4.2.6, 2010 Standards 308.3.1, and 2014 NYC 308.3.1.*

CXVIII.   The first door at the lower level lacks level maneuvering clearances at the pull side of the door.  The steps are within 60 inches perpendicular to the doorway. Furthermore, the side wall is within 18 inches parallel to the doorway beyond the latch.
*Defendants fail to provide an accessible door with level maneuvering clearances. 60 inches perpendicular to the doorway for 18 inches parallel to the doorway beyond the latch is required for a forward approach to the pull side of a door.  See 1991 Standards 4.13.6, 2010 Standards 404.2.4, and 2014 NYC 404.2.3.*

*CXIX.* The second door at the lower level lacks level maneuvering clearances at the pull side of the door.  The opposite wall is within 60 inches perpendicular to the doorway.
*Defendants fail to provide an accessible door with level maneuvering clearances. 60 inches perpendicular to the doorway for 18 inches parallel to the doorway beyond the latch is required for a forward approach to the pull side of a door.  See 1991 Standards 4.13.6, 2010 Standards 404.2.4, and 2014 NYC 404.2.3.*

CXX. The exit door is not accessible. The public entrance is also an exit and is not accessible as described above.
*Defendants fail to provide accessible means of egress in the number required by the code. See 1991 Standards 4.1.3(9), 2010 Standards 207.1, and 2014 NYC 1007.1.*

26.     Upon information and belief, a full inspection of the defendants' place of public accommodation will reveal the existence of other barriers to access.

27.     Defendants failure to make their place of public accommodation accessible denies plaintiff the opportunity to participate in or benefit from services or accommodations because of disability.

28.     As required by the ADA (remedial civil rights legislation) to properly remedy defendants' discriminatory violations and avoid piecemeal litigation, plaintiff requires a full inspection of the defendants' public accommodation in order to catalogue and cure all of the areas of non-compliance with the ADA.  Notice is therefore given that plaintiff intends on amending the Complaint to include any violations discovered during an inspection that are not contained in this Complaint.

29.     Defendants have endangered plaintiff's safety and denied plaintiff the opportunity to participate in or benefit from services or accommodations because of disability.

30.     Defendants have not satisfied their statutory obligation to ensure that their policies, practices, procedures for persons with disabilities are compliant with the laws.  Nor have defendants made or provided reasonable accommodations or modifications to persons with disabilities.

31.     Defendant Allen/Orchard, LLC has failed to ensure that its lessee's place of public accommodation and the elements therein are in compliance with the 1991 Standards or the 2010 Standards; the Administrative Code, and the BCCNY, including but not limited to ensuring the maintenance of accessible features.

32.     The barriers to access within defendants' place of public accommodation continue to exist.

33.     Plaintiff has a realistic, credible and continuing threat of discrimination from the defendants' non-compliance with the laws prohibiting disability discrimination. The barriers to access within defendants' place of public accommodation continue to exist and deter plaintiff.

34.     Plaintiff frequently travels to the shopping area and neighborhood where defendants' place of public accommodation is located and patronizes places in the neighborhood.

35.     Plaintiff intends to patronize the defendants' place of public accommodation several times a year after it becomes fully accessible and compliant with the 1991 Standards or the 2010 Standards, the Administrative Code, and the relevant accessibility portions of the BCCNY and 2014 NYC.

36.     Plaintiff is also a "tester" for the purposes of asserting basic civil rights and monitoring, ensuring, and determining whether defendants' place of public accommodation is fully accessible and compliant with the 1991 Standards or the 2010 Standards, the Administrative Code, and the relevant accessibility portions of the BCCNY and 2014 NYC.

37.     Plaintiff intends to patronize the defendants' place of public accommodation several times a year as "tester" to monitor, ensure, and determine whether defendants' place of public accommodation is fully accessible and compliant with the 1991 Standards or the 2010

Standards, the Administrative Code, and the relevant accessibility portions of the and 2014 NYC – all for the benefit of those similarly situated to plaintiff.

## FIRST CAUSE OF ACTION
### (VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT)

38.    Plaintiff realleges and incorporates by reference all allegations set in this Complaint as if fully set forth herein.

39.    Plaintiff is substantially limited in the life activity of both walking and body motion range and thus has a disability within the meaning of the ADA.  As a direct and proximate result of plaintiff's disability, plaintiff uses a wheelchair for mobility, and also has restricted use of arms and hands.

40.    The ADA imposes joint and several liability on both the property owner and lessee of a public accommodation.  28 C.F.R. 36.201(b).

41.    Under the ADA, both the property owner and lessee are liable to the plaintiff and neither can escape liability by transferring their obligations to the other by contract (i.e. lease agreement).  28 C.F.R. 36.201(b).

42.    Defendants have and continue to subject plaintiff to disparate treatment by denying plaintiff full and equal opportunity to use their place of public accommodation all because plaintiff is disabled.  Defendants' policies and practices have disparately impacted plaintiff as well.

43.    By failing to comply with the law in effect for decades, defendants have articulated to disabled persons such as the plaintiff that they are not welcome, objectionable and not desired as patrons of their public accommodation.

44.    Defendants have discriminated against the plaintiff by designing and/or constructing a building, facility and place of public accommodation that is not readily accessible

to and usable by the disabled plaintiff and not compliant with the 1991 Standards or the 2010 Standards.  See 28 C.F.R. § 36.401(A)(1) and 42 U.S.C. §12183(a)(1).

45.     Defendants' place of public accommodation is not accessible and fails to provide an integrated and equal setting for the disabled, all in violation of 42 U.S.C. §12182(b)(1)(A) and 28 C.F.R. § 36.203.

46.     Upon making alterations to their public accommodation, defendants failed to make their place of public accommodation accessible to plaintiff to the maximum extent feasible in violation of 28 C.F.R. §§ 36.402 and 36.406.

47.     Upon making these alterations to the primary function areas, defendants failed to make the paths of travel to the primary function areas accessible to plaintiff, in violation of 28 C.F.R. § 36.403.

48.     Defendants failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of 28 C.F.R. § 36.304.  It would be readily achievable to make defendants' place of public accommodation fully accessible.

49.     By failing to remove the barriers to access where it is readily achievable to do so, defendants have discriminated against plaintiff on the basis of disability in violation of § 302(a) and 302(b)(2)(A)(iv) of the ADA, 42 U.S.C. § 12182(a), (b)(2)(A)(iv), and 28 C.F.R. § 36.304.

50.     In the alternative, defendants have violated the ADA by failing to provide plaintiff with reasonable alternatives to barrier removal as required by 28 C.F.R. § 36.305.

51.     Defendants failure to remove the barriers to access constitutes a pattern and practice of disability discrimination in violation of 42 U.S.C. § 12181 *et. seq.*, and 28 C.F.R § 36.101 *et. seq.*

52.     Administrative Code §§ 19-152 and 7-210 impose a non-delegable duty on the property owner to repave, reconstruct, repair, and maintain its abutting public sidewalk.  As a result, within the meaning of the ADA, Allen/Orchard, LLC continuously controlled, managed and operated the public sidewalk abutting 192-196 Allen Street, which includes the portion of the sidewalk constituting the entrance to defendants' place of public accommodation.

53.     Allen/Orchard, LLC's failure to construct and maintain an accessible entrance from the public sidewalk to defendants' place of public accommodation constitutes disability discrimination in a violation of the ADA.

54.     Defendants have and continue to discriminate against plaintiff in violation of the ADA by maintaining and/or creating an inaccessible public accommodation.

**SECOND CAUSE OF ACTION**
**(VIOLATION OF THE NEW YORK STATE EXECUTIVE LAW)**

55.     Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

56.     Plaintiff suffers from various medical conditions that separately and together prevent the exercise of normal bodily functions in plaintiff; in particular, the life activities of both walking and body motion range.  Plaintiff therefore suffers from a disability within the meaning of the Executive Law § 296(21).

57.     Defendants have and continue to subject plaintiff to disparate treatment by denying plaintiff equal opportunity to use their place of public accommodation all because plaintiff is disabled.

58.     Defendants discriminated against plaintiff in violation of New York State Executive Law § 296(2), by maintaining and/or creating an inaccessible place of public

accommodation.  Each of the defendants have aided and abetted others in committing disability discrimination.

59.     Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of Executive Law § 296(2)(c)(iii).

60.     In the alternative, defendants have failed to provide plaintiff with reasonable alternatives to barrier removal as required in violation of Executive Law § 296(2)(c)(iv).

61.     It would be readily achievable to make defendants' place of public accommodation fully accessible.

62.     It would not impose an undue hardship or undue burden on defendants to make their place of public accommodation fully accessible.

63.     As a direct and proximate result of defendants' unlawful discrimination in violation of New York State Executive Law, plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, embarrassment, stress, and anxiety.

64.     Plaintiff has suffered damages in the amount to be determined at trial.

### THIRD CAUSE OF ACTION
### (VIOLATIONS OF THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK)

65.     Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

66.     Plaintiff suffers from various medical conditions that separately and together, impair plaintiff's bodily systems - in particular, the life activity of both walking and body motion range -and thus plaintiff has a disability within the meaning of the Administrative Code § 8-102(16).

67.     The Local Civil Rights Restoration Act of 2005 (the "Restoration Act"), also known as Local Law 85, clarified the scope of the Administrative Code in relation to the New York City's Human Rights Law.  The Restoration Act confirmed the legislative intent to abolish "parallelism" between the Administrative Code and the Federal and New York State anti-discrimination laws by stating as follows:

> The provisions of this title shall be *construed liberally* for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed.

Restoration Act § 7 amending Administrative Code §8-130 (emphasis added). The Restoration Act is to be construed broadly in favor of plaintiff to the fullest extent possible.

68.     Defendants have and continue to subject plaintiff to disparate treatment and disparate impact by directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their place of public accommodation all because of disability in violation of the Administrative Code § 8-107(4).  Each of the defendants have aided and abetted others in committing disability discrimination.

69.     Defendants have discriminated, and continue to discriminate, against plaintiff in violation of the Administrative Code § 8-107(5)(b) by designing, creating and/or maintaining an inaccessible commercial facility/space.

70.     Defendants have subjected, and continue to subject, plaintiff to disparate treatment by directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their commercial facility/space all because of disability in violation of the Administrative Code § 8-107(5)(b).

71.     In violation of Administrative Code § 8-107(6), defendants have and continue to, aid and abet, incite, compel or coerce each other in each of the other defendants' attempts to, and

in their acts of directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their commercial facility/space and the place of public accommodation therein, all because of disability, as well as other acts in violation of the Administrative Code.

72.     Administrative Code §§ 19-152 and 7-210 impose a non-delegable duty on the property owner to repave, reconstruct, repair, and maintain its abutting public sidewalk.  As a result, Allen/Orchard, LLC continuously controlled, managed and operated the public sidewalk abutting 192-196 Allen Street, which includes the portion of the sidewalk constituting the entrance to defendants' place of public accommodation.

73.     Allen/Orchard, LLC's failure to construct and maintain an accessible entrance from the public sidewalk to defendants' place of public accommodation constitutes disability discrimination in a violation of the Administrative Code.

74.     Defendants discriminated against plaintiff in violation of the Administrative Code, § 8-107(4), and Local Law 58 by maintaining and/or creating an inaccessible public accommodation.

75.     As a direct and proximate result of defendants' unlawful discrimination in violation of the Administrative Code, plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, stress, embarrassment, and anxiety.

76.     Defendants' long-standing refusal to make their place of public accommodation fully accessible was deliberate, calculated, egregious, and undertaken with reckless disregard to plaintiff's rights under the Administrative Code.

77.     By failing to comply with the law in effect for decades, defendants have articulated to disabled persons such as the plaintiff that they are not welcome, objectionable and not desired as patrons of their public accommodation.

78.     Defendants engaged in discrimination with willful or wanton negligence, and/or recklessness, and/or a conscious disregard of the rights of others and/or conduct so reckless as to amount to such disregard for which plaintiff is entitled to an award of punitive damages pursuant to Administrative Code § 8-502.

79.     By refusing to make their place of public accommodation accessible, defendants have unlawfully profited from their discriminatory conduct by collecting revenue from a non-compliant space and pocketing the money that they should have lawfully expended to pay for a fully compliant and accessible space.  Defendants' unlawful profits plus interest must be disgorged.

80.     Plaintiff has suffered damages in the amount to be determined at trial.

## FOURTH CAUSE OF ACTION
## (VIOLATIONS OF THE NEW YORK STATE CIVIL RIGHTS LAW)

81.     Plaintiff realleges and incorporates by reference all allegations set in this Complaint as if fully set forth herein.

82.     Defendants discriminated against plaintiff pursuant to New York State Executive Law.

83.     Consequently, plaintiff is entitled to recover the penalty prescribed by Civil Rights Law §§ 40-c and 40-d for each and every violation.

84.     Notice of this action has been served upon the Attorney General as required by Civil Rights Law § 40-d.

## FIFTH CAUSE OF ACTION
### (COMMON LAW NEGLIGENCE)

85.     Plaintiff realleges and incorporates by reference all allegations set in this Complaint as if fully set forth herein.

86.     Defendants negligently designed, constructed, operated, repaired and maintained their place of public accommodation located at 192-196 Allen Street in a manner that has rendered their place of public accommodation unsafe to the disabled plaintiff.

87.      At all relevant times, defendants, who hold their property open to the public, have had a duty to patrons such as plaintiff to design, construct, operate, repair, and maintain their place of public accommodation located at 192-196 Allen Street in a reasonably safe condition, including a duty to comply with the Administrative Code.

88.     Defendants breached their duty by negligently designing, constructing, operating, repairing and maintaining their place of public accommodation located at 192-196 Allen Street in a manner that has unreasonably endangered the plaintiff's physical safety and caused plaintiff to fear for plaintiff's own safety.

89.     Defendants failure to design, construct, operate, repair and maintain their place of public accommodation located at 192-196 Allen Street in a manner that is safe to the disabled plaintiff has proximately caused plaintiff emotional distress.

90.     Defendants have had actual and constructive notice that their place of public accommodation located at 192-196 Allen Street is not safe to the disabled.

91.     As a direct result of defendants' negligence, plaintiff has suffered and continues to suffer emotional distress damages in an amount to be determined at trial.

31

## INJUNCTIVE RELIEF

92.     Plaintiff will continue to experience unlawful discrimination as a result of defendants' failure to comply with the above-mentioned laws.  Therefore, injunctive relief is necessary to order defendants to alter and modify their place of public accommodation and their operations, policies, practices and procedures.

93.     Injunctive relief is also necessary to make defendants' facilities readily accessible to and usable by plaintiff in accordance with the above-mentioned laws.

94.     Injunctive relief is further necessary to order defendants to provide auxiliary aids or services, modification of their policies, and/or provision of alternative methods, in accordance with the ADA, Executive Law and the Administrative Code.

## DECLARATORY RELIEF

95.     Plaintiff is entitled to a declaratory judgment concerning each of the accessibility violations committed by defendants against plaintiff and as to required alterations and modifications to defendants' place of public accommodation, facilities, goods and services, and to defendants' policies, practices, and procedures.

## ATTORNEY'S FEES, EXPENSES AND COSTS

96.     In order to enforce plaintiff's rights against the defendants, plaintiff has retained counsel and is entitled to recover attorney's fees, expenses and costs pursuant to the ADA and the Administrative Code.  42 U.S.C. §12205; 28 C.F.R. §36.505; and Administrative Code § 8-502.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

32

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, plaintiff respectfully requests that the Court enter a judgment against the defendants, jointly and severally, in favor of plaintiff that contains the following relief:

A.  Enter declaratory judgment declaring that defendants have violated the ADA and its implementing regulations, Executive Law and Administrative Code and declaring the rights of plaintiff as to defendants' place of public accommodation, and defendants' policies, practices and procedures;

B.  Issue a permanent injunction ordering **defendants to close and cease all business** until defendants remove all violations of the ADA, the 1991 Standards or the 2010 Standards, Executive Law and Administrative Code, including but not limited to the violations set forth above;

C.  Retain jurisdiction over the defendants until the Court is satisfied that the defendants' unlawful practices, acts and omissions no longer exist and will not reoccur;

D.  Award plaintiff compensatory damages as a result of defendants' violations of New York State Executive Law and the Administrative Code of the City of New York;

E.  Award plaintiff punitive damages in order to punish and deter the defendants for their violations of the Administrative Code of the City of New York;

F.  Award plaintiff the penalty for each and every violation of the law, per defendant, pursuant to New York State Civil Rights Law §§ 40-c and 40-d;

G.  Award reasonable attorney's fees, costs and expenses pursuant to the Administrative Code;

H.  Find that plaintiff is a prevailing party in this litigation and award reasonable attorney's fees, costs and expenses pursuant to the ADA; and

I.   For such other and further relief, at law or in equity, to which plaintiff may be

justly entitled.

Dated: October 23, 2018
       New York, New York

Respectfully submitted,

**PARKER HANSKI LLC**


By:____/s_____
       Glen H. Parker, Esq.
       Adam S. Hanski, Esq.
       Robert G. Hanski, Esq.
       Attorneys for Plaintiff
       40 Worth Street, 10th Floor
       New York, New York 10013
       Telephone: (212) 248-7400
       Facsimile: (212) 248-5600
       Email:ash@parkerhanski.com
       Email:ghp@parkerhanski.com
       Email:rgh@parkerhanski.com

34